IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VICKIE K. PREWETT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:00-cv-1674-F |
| | ) | (WO - for publication) |
| STATE OF ALABAMA DEPARTMENT | ) | |
| OF VETERANS AFFAIRS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this action, Plaintiffs, who are current and former employees of the State of Alabama Department of Veterans Affairs, claim entitlement to a variety of remedies for alleged violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (hereinafter "EPA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* (hereinafter "Title VII"). This cause is presently before the Court on Defendants' Motion for Summary Judgment (Doc. # 72) filed on November 1, 2001. The Court has carefully considered the arguments in support of and in opposition to the motion and finds that the motion is due to be GRANTED IN PART and DENIED IN PART.

## I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of

the non-movant and must draw all justifiable inferences from the evidence in the non-moving

party's favor.  *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986);

*McCormick v. City of Fort Lauderdale,* 333F.3d 1234, 1243 (11th Cir. 2003) (the evidence

and all reasonable inferences from the evidence must be viewed in the light most favorable

to the nonmovant).  After the nonmoving party has responded to the motion for summary

judgment, the court must grant summary judgment if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P.

56(c).

> The mere existence of some factual dispute will not defeat
> summary judgment unless that factual dispute is material to an
> issue affecting the outcome of the case.  The relevant rules of
> substantive law dictate the materiality of a disputed fact.  A
> genuine issue of material fact does not exist unless there is
> sufficient evidence favoring the nonmoving party for a
> reasonable jury to return a verdict in its favor.

*Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v.*

*City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted)).

## III.  PROCEDURAL BACKGROUND

On December 7, 2000, Vickie K. Prewett, Christine Hale, Deborah Coker, Vicky

Brown, Lisa Jackson, Teresa Thomason, Susan W. Collier, Valerie Porter Williams, and

Betty Dubose (hereinafter collectively "Plaintiffs") filed a Complaint against the State of

Alabama Department of Veterans Affairs (hereinafter "the Alabama VA") and the Alabama

State Personnel Department (hereinafter "SPD") (referred to collectively hereinafter as

3

"Defendants").  As current and former employees of the Alabama VA, these women sought declaratory and injunctive relief, back pay, prejudgment interest, front pay, liquidated damages, compensatory damages, expenses and attorney fees from Defendants for alleged violations of rights guaranteed under the EPA, the Equal Protection Clause of the United States Constitution[1], and Title VII.  Plaintiffs have all worked at some time as County Veterans Affairs Assistants.  Plaintiffs allege that male employees employed in the position of Veteran Service Officers were paid substantially more than Plaintiffs even though they performed essentially the same duties as Plaintiffs, which duties required equal skill, effort and responsibility as those performed by Plaintiffs, and they performed those duties under similar working conditions as Plaintiffs' working conditions.

On February 12, 2001, Plaintiffs filed an Amended Complaint (Doc. # 25).  The Amended Complaint added several state officials as defendants. Then Governor Don Siegelman was named individually and as Governor of Alabama.  Frank D. Wilkes was named individually and as Director of the Alabama VA.  Thomas G. Flowers was named individually and as Director of SPD.  However, on March 7, 2001, Plaintiffs filed a Notice of Dismissal by which they dismissed several of the claims and Defendants to the action. (Doc. # 39).  Specifically, Plaintiffs dismissed all of their claims under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and all of their claims pursuant to 42 U.S.C. § 1983.  Plaintiffs also dismissed all of their claims against Frank D.

---

[1]  Plaintiffs sought a remedy for the alleged violations of the United States Constitution pursuant to 42 U.S.C. § 1983.

Wilkes, Thomas G. Flowers, and Don Siegelman in their individual and official capacities. On March 26, 2001, the Court entered an Order (Doc. # 47) dismissing all claims brought under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 and all claims against Frank D. Wilkes, Thomas G. Flowers, and Don Siegelman in their individual and official capacities.    Thus, as of the end of March of 2001, the sole Defendants in this case were the Alabama VA and SPD and the sole claims in the case were brought pursuant to the EPA and Title VII.

On October 18, 2001, Plaintiffs sought leave of court to add new plaintiffs to the action.  Specifically, Plaintiffs sought to file a Second Amended Complaint which added claims against Defendants on behalf of Sandra Brown, Deborah Murphree, Cecelia Talley, Jan Robbins, Sue Judkins, and Shirl Brogdon. (Doc. # 66).  On November 7, 2001, the Court granted Plaintiffs leave to add these additional plaintiffs.  (Doc. # 77).  Consequently, the Second Amended Complaint was filed on November 7, 2001.  (Doc. # 78).  Strangely enough, the Second Amended Complaint reasserted claims arising under the Equal Protection Clause of the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 even though Plaintiffs had dismissed such claims from the First Amended Complaint approximately six months before seeking leave to file the Second Amended Complaint.

Early in the case, SPD and the Alabama VA filed motions to dismiss (Docs. # 12, 14, & 34).  On November 7, 2001, the Court denied these motions.  (Doc. # 76).  On November 1, 2001, SPD and the Alabama VA jointly filed a Motion for Summary Judgment (Doc. #

72).  This is the motion currently before this Court.  Plaintiffs opposed the Motion for Summary Judgment.  (Doc. # 94).  On January 14, 2002, Defendants filed supplemental submissions in support of their Motion for Summary Judgment and addressed the claims and parties added by the Second Amended Complaint.  (Doc. # 95).  On January 28, 2002, Plaintiffs submitted a reply to the Defendants' supplemental submissions. (Doc. # 96). Plaintiffs supplemented their submissions again in April of 2002 (Doc. # 103) and in July of 2003 (Doc. # 108).

Although the original Complaint in this case contained a jury demand, the amendments to the Complaint did not.  The parties eventually agreed that this case should be tried without a jury.  The Court ordered that the case would proceed as a non-jury case on February 25, 2002.  (Doc. # 102).  This case was assigned to the undersigned on February 19, 2003.

On December 15, 2004, the parties filed a Joint Motion to Dismiss Remaining Claims brought under 42 U.S.C. § 1983 and the Equal Protection Clause (Doc. # 114), stipulating to the dismissal, with prejudice, of Plaintiff's remaining 42 U.S.C. § 1983 and Equal Protection Clause claims in the Second Amended Complaint.   On December 16, 2004, the Court entered an Order (Doc. # 115) dismissing all claims brought under 42 U.S.C. § 1983 and the Equal Protection Clause in the Second Amended Complaint.  Thus, the sole Defendants in the case are now the Alabama VA and SPD and the sole claims in the case are those brought pursuant to the EPA and Title VII**.**

6

On September 6, 2005, the Court entered an Amended Scheduling Order, setting this case for a non-jury trial on July 31, 2006 (Doc. # 118).

## IV. FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the nonmoving parties,  establish the following material facts.

Plaintiffs are present and former County Veterans Affairs Assistants (hereinafter "CVAAs"). CVAAs are state employees, and are subject to the Alabama Merit System Act. Their positions are classified as Administrative Support Assistant (hereinafter "ASA") positions.  Plaintiffs work (or worked) in county VA offices throughout Alabama as CVAAs. Plaintiffs are all female and at the time the suit was filed, there had never been a male CVAA.   As CVAAs, Plaintiffs perform a variety of duties related to the delivery of counseling and other services to citizens of Alabama who are veterans the United States' Armed Services.

Throughout the period in which Plaintiffs were employed as CVAAs, they have worked alongside male Veteran Service Officers (hereinafter "VSOs"),[2] who are employees of the Alabama VA.  It is undisputed that most of the VSOs receive significantly higher

---

[2] The VSO position is open to males and females, but the vast majority of VSOs are male. Plaintiffs are only comparing themselves to the male VSOs.

salaries than the Plaintiffs.[3]  Plaintiffs allege that the VSOs perform essentially the same duties, and that said duties require equal skill, effort, and responsibility and are performed under similar working conditions as those performed by Plaintiffs.  Plaintiffs further allege that Defendants knew that Plaintiffs were receiving unequal pay for performing equal work and intentionally refused to correct the problem.

A.      *Dual Classification System*

The CVAAs and VSOs fall under two different classification systems.  The CVAAs are state employees employed by the SPD.  The VSOs are employed directly by the Alabama VA.   Specifically, the State Board of Veterans' Affairs appoints a State Service Commissioner (more commonly known as the Director of VA) who appoints a VSO to serve in each county.

The CVAAs, as state employees, are subject to the Alabama Merit System Act, Ala. Code § 36-26-1, *et. seq*.  The Act governs benefits and regulations concerning, among other things, the hiring process, job performance standards, promotion, transfer, demotion, layoff, dismissals, suspension, classification of positions, and salary plans.  The regulations include a guaranteed right to appeal terminations and disciplinary actions.  SPD, with the approval

---

[3] As an example, Plaintiff Vicky Brown was hired in March 1993 at a salary of $717.72 bi-weekly.  At the time of filing this lawsuit, her salary was $870.19 bi-weekly.  VSO H. Michael Knodel was hired in May 1993 at a salary of $800.00 bi-weekly. At the time of filing this lawsuit, his salary was $1,231.30 bi-weekly.  Similar pay differentials exist between most of the Plaintiffs and VSO comparators.  The average bi-weekly salary of Plaintiffs employed at the time this suit was filed was $983.00, while the average salary of VSO comparators was $1,379.00.  The few VSOs who receive lower or insignificantly higher salaries than each individual Plaintiff will not be compared to that Plaintiff in evaluating her claims.  *See infra* at 19 (discussion of VSO comparators).

of the Governor and the Finance Director, sets the salary ranges for all merit system employees, including CVAAs. The SPD Director recommends pay plans for each classification to the SPD Board. The SPD Board then adopts the pay plans with the approval of the Governor. However, the Alabama VA actually pays the salaries of the CVAAs.

VSOs are not subject to the Alabama Merit System Act, but serve instead at the discretion of the Director of VA and the State Board of Veterans's Affairs. The Director of VA has the authority to hire, dismiss, establish salaries, and determine merit raises for VSOs. VSOs may be dismissed for cause, including conduct unbecoming a VSO. A VSO may request review of the dismissal by the State Board of Veterans' Affairs, but review is discretionary. After the Director of VA hires an individual, that individual assumes the responsibilities of a VSO for a six-month probationary period. Upon successful completion of the probationary period, the Director of VA recommends the individual for approval to the State Board of Veterans' Affairs. If the Board approves, the individual then becomes a VSO.

B.    *Salaries*

CVAAs are entitled to annual merit raises except in cases of extraordinary circumstances. The director of VA determines whether a VSO receives a merit raise based on that VSO's productivity, work ethic, the recommendation of the VSO's district manager, and the availability of funds. Plaintiffs claim that despite their entitlement to annual merit raises, overall they have received fewer and smaller raises than the VSOs.

C.    *Comparison of Positions of CVAAs and VSOs*

Defendants assert that the qualifications and work requirements for CVAAs and VSOa are significantly different. Plaintiffs claim that the two positions require virtually the same work. A number of the Plaintiffs[4] further claim that when they were hired, they were told the work would be primarily secretarial in nature, but later found out that they would be assisting clients and doing other work similar to the work of VSOs.

1.    *Qualifications*

VSOs are required to be honorably-discharged wartime veterans. Alabama Code Section 31-5-9 states that a VSO "shall be a veteran who served on active duty in the military or naval forces of the United States for a period of 60 days or more in any war in which the United States shall have been engaged, and shall have been honorably discharged therefrom." Ala. Code § 31-5-9 (1975). ASA series employees, including CVAAs, are not required to be wartime veterans, and none of the Plaintiffs are in fact veterans. Their veteran status permits VSOs to become "accredited representatives" before the Board of Veterans' Appeals. Accredited representatives may argue cases in front of the Board. Because Plaintiffs are not veterans, they cannot become accredited representatives and cannot argue cases in front of the Board.

However, though only the VSOs are veterans, cases are randomly assigned to either

---

[4] These Plaintiffs are Brogdon, S. Brown, V. Brown, Coker, Dubose, Robbins, and Talley.

10

a CVAA or VSO; veteran status is not taken into account when assigning cases.[5] Furthermore, although VSOs are all wartime veterans, many just happened to be in the military during wartime and did not serve in combat. In fact, only five of the initial thirteen VSO comparators have served in combat.[6]

VSOs must have experience and training equivalent to two years of a college education. The CVAAs are only required to have training or experience equivalent to graduation from a standard senior high school.

### 2. *Duties outside working hours*

Defendants assert that VSOs are required to be "on call" 24 hours a day, seven days a week, to assist veterans in their counties. They are required to reside in the county of their appointment, be a qualified elector of that county, and maintain "listed" telephone numbers in order to increase their accessibility to veterans and their dependents. They are also prohibited from holding outside employment without approval of the Director of VA. Plaintiffs contend that several VSOs have unlisted home telephone numbers and that the requirement for having a listed home telephone number was created in response to the

---

[5] The Court notes that one VSO, Morris Steenson, testified to a few instances in which the CVAA in his office, Plaintiff Teresa Thomason, referred a veteran to him because as a veteran he had a better understanding of things such as military terminology and military campaigns. Thomason recalls one client who she referred to Steenson because she could not get the necessary information from that client, but claims that Steenson was also unsuccessful in getting the information. The testimony from Thomason and the other Plaintiffs that cases are not specifically routed to VSOs or CVAAs is uncontradicted.

[6] Harrison, Graf, Horton, Lehe, Knodel, Manning, Cowart, and Graves have never served in combat. Vaughan, Haley, Rowell, Steenson, and Ross have had combat experience.

present litigation. Plaintiffs also name many VSOs who have held and continue to hold outside employment.

Defendants allege that VSOs are often required to work on state holidays, such as Memorial Day or Veterans' Day, to help organize and conduct ceremonies commemorating the service of veterans.  They are required to belong to and attend meetings of various veterans' organizations, such as the American Legion, many of which meetings occur after business hours and on weekends.  Because VSOs are exempt from the Fair Labor Standards Act, they are not entitled to any compensation for hours worked in excess of 40 hours a week.  Plaintiffs have testified, however, that neither the VSOs nor the CVAAs perform a significant amount of work outside of the regular 40-hour work week. Plaintiffs also testified that VSOs and CVAAs were equally subject to being contacted by clients outside of working hours, encountering clients in the community, and making periodic visits to clients at their homes, in hospitals, and in other institutions. Plaintiffs stated that they have never been compensated for overtime work and were not aware that they were eligible to receive overtime pay until the issue was raised in the present litigation.  As to VSO involvement in veterans' organizations, Plaintiffs maintain that this involvement is not a significant or substantial part of the VSOs' work.  In addition, many of the Plaintiffs testified that they have been involved in such organizations to the same or similar extent as the VSOs.

### 3.    Standard of Conduct

In order to become a VSO, an individual must take an oath of office and must execute

a bond in the amount of $5,000, "conditioned upon the faithful performance of their official duties." Ala. Code § 31-5-11 (1975). CVAAs are not required to take an oath of office or execute a bond. Defendants allege that VSOs serve in a position of public trust and therefore must adhere to higher ethical and moral standards of conduct than CVAAs, both on and off-duty. Plaintiffs assert that there is no difference in conduct expected and cite periodic uncorrected lapses in the conduct of VSOs. Plaintiffs testified that the Alabama VA's expectations of VSOs and CVAAs have been the same.

4.    *Supervision by VSOs*

Defendants claim that VSOs are responsible for the work performed in their county offices, while CVAAs are not. Plaintiffs testified that they bear equal responsibility for the operation of their offices and that they have not observed situations in which VSOs have been held ultimately responsible for the operation of their offices. Defendants claim that VSOs are responsible for property inventory in their offices, while CVAAs are not.

Defendants further claim that VSOs supervise CVAAs. The parties agree that VSOs serve as the Alabama Merit System "rating supervisors" on the CVAAs' annual performance appraisals filed with the SPD, but disagree about the existence of any other supervisory duties of the VSOs. Defendants claim that though the annual appraisal forms are only filled out once a year, evaluation of the CVAAs takes place year round in order to accurately fill out the forms. Plaintiffs claim that the evaluation process is a formality with little meaning that takes almost no time on the part of the VSOs. Numerous Plaintiffs testified that filling

13

out the evaluation forms for the SPD only takes about half an hour to an hour per year. Defendants also claim that VSOs have the authority to discipline CVAAs and give oral and written reprimands for CVAA misconduct. Most of the Plaintiffs claim that any supervision by VSOs is in name only. Plaintiff Sandra Brown testified that the VSOs do not supervise them in their everyday work, but instead that the CVAAs and VSOs are co-workers who mutually assist one another. This testimony was corroborated by most of the Plaintiffs.

However, Defendants assert that Plaintiffs Christine Hale, Vicky Brown, and Deborah Coker admitted that the VSOs were their supervisors. Plaintiff Hale, when asked if the VSO in her office was her supervisor, said yes. Plaintiff V. Brown, when asked, "Would you agree, then, that [the VSO] is your boss?" responded yes. She also admitted that the VSO can tell her what to do and override any of her decisions. Plaintiff Coker, when asked if the VSO has the ability and authority to assign her work, responded that "[h]e probably has the authority to."

D.    *Knowledge of Unequal Pay and Attempts to Raise CVAAs' Salaries*

On numerous occasions since 1983, Director of the Alabama VA Frank Wilkes (hereinafter "Wilkes") has requested that CVAAs be compensated at a higher rate. He testified that he believes that the work of CVAAs is parallel to that of VSOs and far exceeds the work of a clerk or secretary. SPD has rejected all of these requests, but has acknowledged the similarity of the work of VSOs and CVAAs.

In 1985, a study was made by the SPD of clerical positions in the county veterans'

offices to determine if those positions involved duties and responsibilities outside of those required for the clerical series.  It was determined that those positions fell within the specifications for the clerical series, mostly at the Clerk Typist II level (now known as ASA II).  In 1987, Wilkes sent a letter to Dr. Halcyon Ballard (hereinafter "Ballard"), the State Personnel Director, requesting an upgrading of CVAAs because their duties and responsibilities differed only slightly from those of the VSOs.  After numerous discussions, Ballard rejected this proposal was rejected.  In 1989, Wilkes and a committee of CVAAs developed a proposal for a new position classification for CVAAs.  At that time, an extensive review of the position was made again and Ballard again rejected a change in the CVAAs' classification.  In the alternative, Ballard suggested that the Alabama VA and SPD jointly propose legislation to bring the VSOs under the Alabama Merit System.  Wilkes testified that he rejected Ballard's proposal and stated that he would support such legislation "when hell freezes over." Also in 1989, Wilkes held additional meetings with a committee of CVAAs and Ruth Harrell, a member of the SPD.  Harrell also proposed a new classification for CVAAs to Ballard, which Ballard also rejected.

In 1999, Wilkes began meeting again with a committee of CVAAs to work on upgrading/promoting CVAAs.  The result of these meetings was that the Alabama VA decided to accept that the SPD would not change the classification of CVAAs and that they would work within the ASA classification system.  Also in 1999, Wilkes received a letter from State Senator Hank Sanders expressing concern over the difference in salary between

VSOs and CVAAs suggesting that the matter might be subject to legal attack for gender discrimination. In January 2000, all CVAA positions were reallocated to the highest possible classifications within the ASA series.  CVAAs were required to take appropriate merit system examinations and score high enough to be "reachable" on the register (ranked in the top 10).  All Plaintiffs who were eligible to be promoted were promoted. In April 2000, despite his earlier agreement that he would not ask to change the CVAAs' classification, Wilkes again requested a separate classification for CVAAs and such request was again denied by the SPD.

The majority of CVAAs, including many of the Plaintiffs, oppose any change in the law that would remove them from the Alabama Merit System.  Wilkes and the Alabama VA management are opposed to a change in the law that would bring the VSOs under the Alabama Merit System.

The Director of VA and the Alabama VA management have acknowledged that CVAAs do the same work as VSOs for unequal pay.  In addition to the letters written by Wilkes to Ballard, conversations that took place during Alabama VA management staff meetings also reveal that the Wilkes and other Alabama VA management believed that the CVAAs deserved more money for their work and that their work was basically the same as the work of the VSOs:

> *District Manager Taylor*: And we're talking about these ladies, and I'm certainly in agreement that – they do basically – and I know we don't never want to put that in writing or admit to it.  But basically, they do the same thing and have been doing the same thing that we've –

*District Manager Richardson*: Uh-huh.

*District Manager Taylor*: – done for years.  In light of that, you know – and I'm all behind this movement to get them upgraded and get more money for them and so forth.

Conversations during staff meetings also show that there was concern among the managers about a lawsuit over unequal pay:

*District Manager Richardson*: [I]f it gets into federal court, you may not have a choice . . .

*Director of VA Wilkes*: About what?

*Richardson*: Reclassifying the VSOs.

*Wilkes*: Under the merit system?

*Richardson*: Yeah. . . . They can turn around and do things such as EEOC cases and take a look at equal pay for equal responsibilities.  That may be something that could get involved.  But hopefully, we're doing what we can to address it and resolve it.

## V. DISCUSSION

A.    *Equal Pay Act*

The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work.  *See* 29 U.S.C. § 206(d)(1).  Specifically, the EPA provides that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs

17

the performance of which requires equal skill, effort, and
responsibility, and which are performed under similar working
conditions, except where such payment is made pursuant to (i)
a seniority system; (ii) a merit system; (iii) a system which
measures earnings by quantity or quality of production; or (iv)
a differential based on any other factor other than sex . . .

29 U.S.C. § 206(d)(1).  When Congress enacted the EPA, its purpose was

to remedy what was perceived to be a serious and endemic
problem of employment discrimination in private industry – the
fact that the wage structure in many segments of American
industry has been based on an ancient but outmoded belief that
a man, because of his role in society, should be paid more than
a woman even though his duties are the same.

*Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974) (citations omitted).

To establish a violation of the EPA, a plaintiff must first establish a *prima facie* case
by showing that she performed work substantially equal to that of a male comparator and that
she was paid less than the male comparator.  If she succeeds in establishing a *prima facie*
case, the burden then shifts to the defendant to establish one of four affirmative defenses,
each of which requires the defendant to show that the reason for the pay differential was
something other than sex.  If the defendant presents sufficient evidence to establish an
affirmative defense, the burden then shifts back to the plaintiff to show that the alleged
reason for the pay differential is a pretextual one, and that the real reason for the differential
is sex.  *See Corning Glass Works*, 417 U.S. 188.

1.     *Preliminary Issues*

Prior to evaluating whether Plaintiffs have established a *prima facie* EPA violation,

18

the Court must address several preliminary issues raised by the Defendants in relation to Plaintiffs' EPA claims.

### a.    *VSO Comparators*[7]

Defendants assert that Plaintiffs have failed to identify adequate male comparators to establish a *prima facie* case under the EPA. Plaintiffs respond that in order to be entitled to summary judgment against any individual Plaintiff, Defendants must present evidence eliminating all VSO comparators for that Plaintiff, not just chip away at the list of comparators. The Court agrees with Plaintiffs that summary judgment may not be granted against any individual Plaintiff for lack of an adequate VSO comparator unless Defendants present sufficient evidence to eliminate all of the VSO comparators claimed by that Plaintiff. However, in evaluating Defendants' Motion for Summary Judgment on the EPA claims, the Court must compare each individual Plaintiff only to VSOs who qualify as acceptable comparators for the purpose of evaluating equality of work under the EPA . Therefore, prior to deciding whether each Plaintiff has put forth enough evidence to establish a *prima facie* case of violation of the EPA, the Court must decide which VSOs, if any, each Plaintiff may be compared with to determine equality of work. Thus, the Court will now address

---

[7] Plaintiffs claim that their Title VII claims, unlike their EPA claims, do not require naming specific VSO comparators because the standard for similarity of jobs under Title VII is not as exacting as the standard under the EPA. Defendants do not appear to be arguing the issue of VSO comparators in relation to Title VII, therefore if the Court eliminates a VSO comparator in relation to an individual Plaintiff, it does not mean that that Plaintiff may not cite evidence related to that VSO to support her Title VII claim.

Defendants' specific arguments as to VSO comparators.

Defendants first claim that because Plaintiffs have listed a number of VSO comparators, it is not clear how much each Plaintiff believes she should be making since it is not clear which VSO's salary she is asking for. Plaintiffs respond that each Plaintiff is seeking backpay based upon the highest salary of all of her VSO comparators. The Court accepts this as adequate evidence of what each Plaintiff is requesting in terms of backpay.

Defendants next assert that each Plaintiff names the same twenty-eight[8] VSO comparators, despite the fact that some of the VSOs have served for a longer time than some of the Plaintiffs. Plaintiffs claim that because Defendants are not asserting a "seniority system" defense, Plaintiffs are not limited to naming comparators who have served for the same amount of time as they have. The fact that Defendants are not asserting a "seniority system" defense is irrelevant to whether the VSO comparators must have a length of service comparable to that of Plaintiffs because length of service may be relevant to equality of work. However, a VSO who has served longer than a particular Plaintiff cannot automatically be eliminated from that Plaintiff's list of comparators. Instead, that Plaintiff must be given the opportunity to show that despite the difference in length of service, the work of that VSO is substantially equal to that Plaintiff.

Defendants assert that Plaintiffs cannot name VSO comparators who work in different

---

[8] Plaintiffs initially listed twenty-nine VSOs as comparators, but erroneously included the name "Jeffrey Thomas." The correct name is "Jeff Thompson," who was already one of the other twenty-eight listed comparators.

county offices than they do. Plaintiffs assert that they are not limited by physical proximity in naming comparators because all VSOs in the state of Alabama are part of the same "establishment" as defined by the EPA.[9]  "[C]entral control and administration of disparate job sites can support a finding of a single establishment for purposes of the EPA.  The hallmarks of this standard are centralized control of job descriptions, salary administration, and job assignments or functions." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994). As discussed above, both the CVAAs and the VSOs throughout Alabama are subject to centralized control despite working in different job sites.  All CVAAs are controlled by the Alabama Merit System, while all VSOs are regulated by the Director of VA.  This is enough evidence for Plaintiffs to create a factual issue as to whether CVAAs may legitimately be compared with VSOs who work in other offices, therefore at this point the Court cannot disqualify VSO comparators in who work in different offices than Plaintiffs.[10] Defendants further claim that Plaintiffs cannot list as comparators VSOs who work in larger offices in larger cities than they do because those VSOs have heavier caseloads, and therefore do not perform equal work as required to establish a *prima facie* case under the EPA.  Plaintiffs assert that they have put forth sufficient evidence that VSOs throughout the

---

[9] The EPA states that "[n]o employer . . . shall discriminate, *within any establishment . . .*"29 U.S.C. § 206(d)(1) (emphasis added).

[10] Defendants assert that Plaintiff Christine Hale does not have a valid EPA claim because she works in an office in which the only VSO is female.  However, if Plaintiffs prove that CVAAs and VSOs statewide are part of the same establishment, Hale may compare herself to male VSOs in other offices in order to make her EPA claim.  Thus, Hale may have a valid EPA claim and the Court will not grant summary judgment against her.

state of Alabama perform work equal to that of the CVAAs to keep the Court from disqualifying these VSOs as comparators. Several Plaintiffs testified that they carried the same or greater caseloads than VSOs in larger offices. Furthermore, the statements that CVAAs and VSOs perform equal work made during the Alabama VA managers' meetings do not differentiate among the various county offices.[11] The Court finds that this is adequate evidence to keep from disqualifying VSO comparators based on office size and location at the summary judgment stage.

Defendants assert that by listing all twenty-eight VSOs as comparators, some Plaintiffs are attempting to compare themselves to VSOs who in fact earn less than they do. Plaintiffs respond that they have clearly stated that each Plaintiff is only comparing herself with the VSO comparators who earn more than her. The Court acknowledges that Plaintiffs may not validly compare themselves to VSOs who earn a lower salary than they do, and therefore the Court eliminates from each Plaintiff's list of comparators those VSOs who earn less than she does. The Court will not consider those VSOs when evaluating Plaintiffs' EPA claims.

Defendants claim that Plaintiffs cannot list comparators who are no longer VSOs (or were no longer VSOs at the time this suit was filed). Plaintiffs assert that they may list

---

[11] To refute Plaintiffs' evidence, Defendants point to Plaintiff Murphree's testimony that the caseload of a VSO in Mobile County would "probably be a tad bigger than Calhoun County, larger volume of clientele" and to the testimony of Glen Reynolds, the Administrative Assistant to the Director of VA, who testified about the heavier caseloads in certain counties. On summary judgment, this is not enough evidence for the Court to disqualify VSOs based on office size and location.

comparators who are no longer VSOs because the EPA permits comparison between successors to the same position as well as between those who work simultaneously in similar positions.   While true, this only means that a plaintiff may compare her salary to the individual who she replaced or who replaced her if there are no similarly-situated employees employed concurrently with the plaintiff.   It does not mean that a plaintiff can compare herself to any previous employee.   Second, Plaintiffs claim that liability under Title VII may be based on acts occurring outside of the two-year statute of limitations period as long as a current violation is also shown.   The Court does not decide whether this is true of Title VII claims, but holds that this assertion is irrelevant to the consideration of the propriety of VSO comparators for the EPA claims.   However, the Fourth Circuit has held that

> The statute of limitations applicable to Equal Pay Act and Title VII violations constitutes a jurisdictional bar that operates in relation to the injury to the plaintiff.   Statutes of limitations do not operate as an evidentiary bar controlling the evidence admissible at the trial of a timely-filed cause of action. In other words, the statute of limitations does not operate to limit the evidence [plaintiff] may introduce regarding her co-workers.   In the context of the Equal Pay Act, the statute of limitations does not dictate which co-workers the plaintiff may submit as comparators. . . . It is immaterial that a member of the higher paid sex ceased to be employed prior to the period covered by the applicable statute of limitations period for filing a timely suit under the EPA.

*Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 346 (4th Cir. 1994).   The court went on to state that the relevant injury is the diminished paycheck that the plaintiff continues to receive; the work and wages of the comparator are merely pieces of evidence relevant to the legitimacy of the plaintiff's case.   *Id.*   Therefore, Plaintiffs may include as comparators VSOs who are no longer employed by the Alabama VA and who were not so employed prior to the

23

statute of limitations period.[12]

Finally, Defendants claim that Plaintiffs cannot compare themselves to VSOs who are district managers[13] because the work of district managers is different from the work of CVAAs. Plaintiffs did not respond directly to this claim, but they do claim that each VSO, including the district managers, testified that he does the same work as the Plaintiffs. However, the testimony of the four district managers only supports the general claim that VSOs and CVAAs do the same work.  None of the four district managers testified that he himself does the same work as the CVAAs.  Therefore, even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs cannot list the district manager VSOs as comparators because they have presented no evidence that the district managers do substantially the same work as the CVAAs.

Eliminating the VSOs who earn less than each individual Plaintiff and the VSOs who are (or were) district managers, there are still several VSO comparators left for each Plaintiff.[14] Thus, the Court must compare each Plaintiff to her remaining VSO comparators to determine whether she has set forth a *prima facie* case of violation of the EPA.

   b.   *Timeliness of Plaintiff Judkins' EPA Action*

Defendants claim that Plaintiff Sue Judkins failed to timely file her EPA action.  The

_____

[12] These comparators are Robert Story, Samuel Flanigan, and Lawrence Battiste.

[13] The four VSOs who are (or were) district managers are Louis Graf, Charles Horton, Willie E. Moore, and Harold S. Taylor.

[14] See Appendix for a list of the remaining VSO comparators for each Plaintiff.

EPA provides that actions alleging violation of the EPA must be filed within two years after the cause of action accrues, except that suits for "willful" violations may be commenced up to three years after the cause of action accrues.  29 U.S.C. § 255(a).  Judkins retired on August 31, 1998 and the present action was filed on December 7, 2000.  Thus, the action was filed slightly more than two years and three months after the cause of action accrued. Defendants claim that the two-year statute of limitations applies to her claim, and that therefore she untimely filed her EPA action.  Plaintiffs assert that Defendants willfully violated the EPA, and that therefore the three-year statute of limitations applies and Judkins' action is timely.  An employer commits a willful violation where it "knew or showed reckless disregard for the matter of whether its conduct was prohibited."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 108 S. Ct. 1677, 1680, 100 L.Ed.2d 115 (1988).  Plaintiffs assert that Defendants meet this standard because both the Alabama VA and the SPD have acknowledged several times that the pay was inequitable and because when CVAAs were hired, they were told their work was going to be purely secretarial, then were given work equal to that of VSOs.  The Court finds that this is enough evidence to create a genuine issue of fact as to whether Defendants willfully violated the EPA.  Therefore, the Court will not grant summary judgment against Plaintiff Judkins for failure to timely file her EPA claim.

      *c.*    *Right to Injunctive Relief*

Defendants assert that Plaintiffs are not entitled to injunctive relief because the EEOC has exclusive jurisdiction to seek injunctive relief under the EPA.  The right to bring an

action for injunctive relief under the Fair Labor Standards Act ("FLSA") rests exclusively with the Secretary of Labor. *Powell v. Florida*, 132 F.3d 677, 678 (11th Cir. 1998). The EPA is part of the FLSA. Plaintiffs concede that they cannot seek an injunction correcting the pay of CVAAs who are not parties to this action, but assert they may seek injunctive relief prospectively correcting their own salaries. Courts have ordered prospective changes to plaintiffs' salaries in EPA cases. *See, e.g., Ramsey v. Sate of Alabama Public Svc. Comm'n*, 86 F. Supp. 2d 1124, 1130 (M.D. Ala. 2000) (holding the employer liable for back pay "with plaintiff Ramsey to be paid at the higher salary from then on"). Therefore, Plaintiffs here may seek injunctive relief under the EPA regarding their own salaries.

d.     *Plaintiff Collier's Constructive Discharge Claim*

Plaintiff Susan Collier resigned from her position as a CVAA in February 2000. In the Second Amended Complaint, Plaintiffs allege that Collier was constructively terminated by Defendants policy of underpaying CVAAs as compared to male VSOs and request reinstatement, or in the alternative front pay for damages occurring as a result of her constructive termination. On summary judgment, Defendants claim that Collier fails to prove a claim of constructive discharge. Plaintiffs have not responded to Defendants' claim. A finding of constructive discharge rests on the plaintiff proving that "working conditions would have been so difficult or unpleasant that a *reasonable* person in the employee's shoes would have felt compelled to resign." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987). While unequal pay is relevant to a determination of constructive discharge,

"a difference in pay alone cannot constitute such an aggravated situation that a reasonable employee would be forced to resign." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1077 (5th Cir. Unit A May 1981).[15]  Collier testified that she left her position because of the amount of stress caused by the workload and by clients she saw, though she admitted that she enjoyed assisting clients.  She also complained that other people were getting paid more for doing the same work.  Under the Eleventh Circuit's constructive discharge standard, this is not enough evidence to maintain a constructive discharge claim, therefore summary judgment is due to be granted in favor of Defendants as to Plaintiff Collier's constructive discharge.

> e.     *Eleventh Amendment Immunity*

Defendants raise the defense of Eleventh Amendment immunity regarding the EPA claims.  As Defendants recognize, the Eleventh Circuit has held that states are not immune from EPA suits, *Hundertmark v. State of Fla. Dept. of Transp.*, 205 F.3d 1272 (11th Cir. 2000), and that holding is binding precedent on this Court.  Therefore, the Court holds that Defendants do not have Eleventh Amendment immunity from Plaintiffs' EPA claims.

Now that the preliminary issues have been addressed, the Court will evaluate whether Plaintiffs have set forth a *prima facie* case of an EPA violation.

> 2.     *Prima Facie Case*

---

[15] Decisions of the Fifth Circuit handed down prior to September 30, 1981 are binding precedent on the district courts of the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

To establish a *prima facie* case under the EPA, the plaintiff must show "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992)(quoting *Corning Glass Works,* 417 U.S. at 195). Thus, establishing the *prima facie* case requires comparison of the plaintiff's work and earnings to that of a person of the opposite sex; the person of the opposite sex to whom a plaintiff compares herself for purposes of showing a wage discrepancy is referred to as a "comparator." *Gosa v. Bryce Hosp.,* 780 F.2d 917, 918 (11th Cir. 1986). A plaintiff need not prove that her job is identical to that of her comparator; rather, she must only demonstrate that the jobs are "substantially equal." *Miranda*, 975 F.2d at 1533.

A court's resolution of a plaintiff's claim that the work she performed is "equal" to that of the comparator does not depend simply on a comparison of job titles or classifications, but on a comparative analysis of actual job requirements and performance. 29 C.F.R. § 1620.13(e); *Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd.,* 590 F.2d 128, 133 (5th Cir. 1979) (while the job title is entitled to some weight in the assessment of comparative responsibility the actual job content is dispositive). In making this comparison, a court must focus solely on the primary duties of each job, not the duties that are incidental or insubstantial. *Miranda*, 975 F.2d at 1533. Furthermore, a court should compare only the jobs held by the male and female employees, not the skills and qualifications of the

28

individual employees holding those jobs.  That is, the court should consider only the skills and qualifications actually needed to perform the jobs.  *Id.*

> a.    *Equal Skill*

"Skill includes consideration of such factors as experience, training, education, and ability. . . . Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill."  29 C.F.R. § 1620.15(a). Defendants first argue that the requirement that VSOs be wartime veterans makes the skills necessary for the CVAA and VSO positions unequal.  Defendants assert that VSOs being veterans gives the Alabama VA an established presence in the community, makes VSOs uniquely qualified to sympathize and connect with fellow veterans, and permits VSOs to be "accredited representatives" before the Board of Veterans' Appeals.  On the other hand, Plaintiffs have presented evidence that veteran status is not required to perform the job. For instance, the fact that cases are randomly assigned to VSOs and CVAAs suggests that veteran status is unimportant to performance of the job.  On Defendants' Motion for Summary Judgement, viewing all facts in the light most favorable to the Plaintiffs, Plaintiffs' evidence is sufficient to establish that being a veteran is not necessary to perform the job, and therefore cannot be considered in determining equality of skill.

Defendants also argue that the VSO position requires greater skill than the CVAA position because VSOs are required to have experience and training equivalent to two years of college, while CVAAs are only required to have experience and training equivalent to

graduation from high school.  Again, Plaintiffs have presented enough evidence that this difference in skill is not necessary to meet the requirements of the job, and therefore cannot be considered in determining equality of skill.

Thus, Plaintiffs have presented sufficient evidence to create a question of fact as to whether VSO and CVAA positions require equal skill.

> b.  *Equal Effort*

"Effort is concerned with the measurement of the physical or mental exertion needed for performance of a job.  Job factors which cause mental fatigue and stress, as well as those which alleviate fatigue, are to be considered." 29 C.F.R. § 1620.16(a).  Defendants argue that the VSO position requires greater effort than the CVAA position because of the after hours work required of VSOs for which they do not receive additional compensation (described in detail above).  Plaintiffs claim that they perform essentially the same after hours work, also without compensation. The evidence presented by Plaintiffs to this effect is sufficient to create a question of fact as to whether VSO and CVAA positions require equal effort.

> c.  *Equal Responsibility*

"Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R § 1620.17(a). Defendants assert that the VSO position requires greater responsibility because of the high standard of conduct required of VSOs (detailed above) and the VSOs' responsibility for the work performed in their respective offices.  Additionally, Defendants

assert that the VSO position entails greater responsibility because the VSOs supervise the CVAAs.  Plaintiffs claim that the standard of conduct for VSOs is equal to or less than that of CVAAs and that VSOs are not held ultimately responsible for the work of their offices. Plaintiffs admit that VSOs are "rating supervisors" on the CVAAs' annual performance appraisals, but most of the Plaintiffs assert that VSOs are supervisors in name only and that filling out the annual performance appraisals is a minimal part of their jobs.  However, the evidence, viewed in the light most favorable to the Plaintiffs, supports Defendants' assertion that Plaintiffs Vicky Brown and Christine Hale admitted that the VSOs are their supervisors. Since supervisors inherently have more responsibility than their subordinates, these two Plaintiffs have failed to show that their work is substantially similar to the VSOs, and therefore have failed to establish a *prima facie* EPA violation.  Thus, summary judgment is due to be granted in favor of Defendants as to the EPA claims of Plaintiffs V. Brown and Hale.  While Defendants also claim that Plaintiff Coker admitted that the VSO was her supervisor, her statement that he probably has the authority to assign her work is insufficient for the Court to hold that they do not have equal responsibility, thus the Court will not grant summary judgment against Coker for this reason.  As to the other Plaintiffs, they have presented enough evidence to create a question of fact as to whether VSO and CVAA positions require equal responsibility.

       d.    *Similar Working Conditions*

Defendants contend that the after hours work performed by VSOs demonstrates that

31

VSOs and CVAAs do not perform their jobs under similar working conditions.

> The term 'similar working conditions' encompasses two subfactors: 'surroundings' and 'hazards.' 'Surroundings measure the elements, such as toxic chemicals or fumes, regularly encountered by a worker, their intensity and their frequency. 'Hazards' take into account the physical hazards regularly encountered, their frequency and the severity of the injury they can cause.

29 C.F.R. § 1620.18.  *See also Corning Glass Works,* 417 U.S. at 201-02.  After hours work has no relation to either the surroundings or hazards of the job.  Moreover, even if the after hours work could somehow fall within the definition of "working conditions," Plaintiffs assert that CVAAs perform the substantially the same after hours work, and therefore have created a question of fact as to whether VSOs and CVAAs perform their jobs under similar working conditions.

As Plaintiffs have put forth sufficient evidence to create an issue of fact as to whether VSOs and CVAAs perform equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, they have established a *prima facie* case of violation of the EPA.

### 3.    *Affirmative Defenses*

"Once a *prima facie* case is demonstrated, to avoid liability the employer must prove by a preponderance of the evidence that the differential is justified by one of four exceptions set forth in the EPA."  *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir. 1995)(internal quotations and citations omitted).  The four affirmative defenses available to the employer are: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or

32

quality of production; or (4) a differential based on any additional factor other than sex. *See* 29 U.S.C. § 206(d)(1). Importantly, a defendant invoking an affirmative defense under the EPA must show that the factor of sex provided no basis for the wage differential. *Gosa,* 780 F.2d at 918 (the requirements for proving an exception are not met unless the factor of sex provides no part of the basis for the wage differential). A defendant's burden in establishing the application of one of the exceptions is a heavy one. *See Corning Glass Works,* 417 U.S. at 196-97. However, if a defendant proves an affirmative defense, that defendant is absolved of liability as a matter of law. *Mulhall,* 19 F.3d at 591. The Eleventh Circuit has noted that it is difficult to dispose of an affirmative defense by way of summary judgment because "[c]redibility and the weight to be given to such 'explanations' are traditionally matters left to the consideration of factfinders." *Id.* at 595. Defendants argue that the difference in pay between the CVAAs and the VSOs is justified by two of the four exceptions.

First, Defendants assert that the difference in pay falls under the "merit system" exception. The Eleventh Circuit defines a merit system as a system which "presents a means of order or advancement or reward for merit." *Brock v. Georgia S.W. Coll.*, 765 F.2d 1026, 1036 (11th Cir. 1985) *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L.Ed.2d 115 (1988). The employer must show that its merit system is administered systematically and objectively. *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 726 (5th Cir. 1970). The merit system exception must be strictly construed

33

against the employer. *Id.*  Clearly, the Alabama Merit System, under which the CVAAs are employed, qualifies as a merit system under this definition.  The Alabama Merit System Act sets forth objective standards and processes for hiring, promotion, transfer, and many other aspects of advancement.  However, it is undisputed that the VSOs are not governed by the Act and are not merit system employees.  The Equal Pay Act excepts "payment . . . made pursuant to . . . a merit system."  This language suggests that the Plaintiffs and their comparators must be part of the same merit system.  Based on the Eleventh Circuit's definition of "merit system"  and analysis of the merit system exception, it appears that the rationale behind the exception is that if both a plaintiff and her comparator are part of a merit system, each one's pay has been determined fairly and objectively by the system, and therefore the difference in pay is justified by legitimate factors other than sex.  However, in this case, Plaintiffs and their comparators are not part of the same merit system, thus their relative pay has not been determined objectively by the same system.  Therefore, the fact that the CVAAs are governed by a merit system is not any evidence that their pay has been determined fairly in relation to the VSOs' pay.  Thus, Defendants cannot assert the merit system exception as an affirmative defense.

Second, Defendants contend that the difference in pay falls within the "factor other than sex" exception.  Defendants cite four factors other than sex that justify the pay difference – the dual classification system, the veteran status requirement, Defendants' good faith belief that all employees were properly classified, and the fact that creation of a new

34

classification could violate the *Frazer* order.  The legislative history of the EPA suggests that Congress intended for the "factor other than sex" exception to be broad, allowing for differentials in pay based on any factor or factors other than sex.  *See County of Washington v. Gunther*, 452 U.S. 161, 170 n.11 (1981).  The Eleventh Circuit, however, has suggested that the exception be applied more narrowly, requiring that the "factor other than sex" have a legitimate business purpose.[16]  The Eleventh Circuit also requires that defendants present "an explanation of how those factors [other than sex] actually resulted in an individual employee earning more than another."  *Brock*, 765 F.2d at 1037.

Defendants first assert that the "dual classification system" is a factor other than sex. Defendants do not specifically argue that the dual classification system serves a legitimate business purpose, but instead cite decisions of other courts finding that the fact that salaries are paid from two different sources may be a factor other than sex.  None of the cases cited

---

[16] *See Price v. Lockheed Space Operations Co.*, 856 F.2d 1503, 1506 (11th Cir. 1988)(stating that "[a]n employer will have violated the Act . . . if other business reasons do not reasonably justify the utilization of prior salary [to determine current salary]"); *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988)(stating that the exception applies "when the disparity results from unique characteristics of the same job; from an individual's experience, training or ability; or from special exigent circumstances connected with the business").  The Second, Sixth, and, Ninth Circuits also require the "factor other than sex" to be business related.  *See Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520,525 (2d Cir. 1992)(holding that an employer must prove that the "system resulting in differential pay is rooted in legitimate business-related differences in work responsibilities and qualifications"); *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988)(requiring that the factor "was adopted for a legitimate business reason"); *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 876 (9th Cir. 1982)(stating that "[a]n employer thus cannot use a factor which causes a wage differential between male and female employees absent an acceptable business reason").  The Seventh and Eighth Circuits require only that the factor be bona fide (used in good faith) and gender neutral on its face.  *See Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989); *Taylor v. White*, 321 F.3d 710, 717-719 (8th Cir. 2003).

support Defendants' argument.  A number of the cases apply too broad a definition of "factor other than sex." *See, e.g., Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987).  While the Fourth Circuit stated in one case that it was "satisfied that the pay differential was not based on sex . . . [but was] [i]nstead attributable to the existence of two distinct salary programs," *EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 726 (4th Cir. 1980), the Eleventh Circuit has held that *Aetna* "does not stand for the proposition that pay disparity is justified when it results from two distinct nondiscriminatory merit systems.  Rather, the Fourth Circuit validated the differential because of the male comparator's experience and background." *Glenn,* 841 F.2d at 1571 n.9.  Thus, the existence of a dual classification system alone does not count as a "factor other than sex" and Defendants cannot assert the dual classification system alone as an affirmative defense.

Defendants also claim that the requirement that VSOs be wartime veterans is a "factor other than sex."  Defendants claim that assisting veterans is clearly a legitimate business purpose.  They claim that the state owes a debt of gratitude to veterans for their service; that veterans are likely to possess certain qualities, such as courage, which are valuable qualifications for a public officeholder; and that veterans should be aided in relocation and rehabilitation.  Defendants also make factual allegations concerning the importance of veteran status to the VSO position (detailed above).  These claims are enough to meet the burden of showing that veteran status may be a "factor other than sex" which justifies the

36

difference in pay.[17]

Third, Defendants assert that the SPD's good faith belief that the CVAAs are properly classified as ASAs is a "factor other than sex."  Defendants claim that the Court must defer to the SPD's good faith business judgment that Plaintiffs are properly classified.  "Under the Equal Pay Act, the courts . . . are not permitted to 'substitute their judgment for the judgment of the employer ... who [has] established and applied a bona fide job rating system,' so long as it does not discriminate on the basis of sex." *Gunther*, 452 U.S. at 170-71, 101 S. Ct. at 2248-49 (citing 109 Cong. Rec. 9209 (1963)(statement of Rep. Goodell)).  However, this does not suggest that "Congress . . . envisioned as a bona fide 'other factor' an employer's mere belief, untested by any objective job rating system, that men and women are not engaging in equal work." *Laffey v. Northwest Airlines, Inc.*, 740 F.2d 1071, 1079 (D.C. Cir. 1984).  Thus, whether good faith belief may be considered to be a "factor other than sex" turns on whether the decision to pay men and women unequally was the result of the application of an objective job rating system.  While it is clear that the merit system governing CVAAs is an objective job rating system, there exists a question of fact as to whether the salaries of CVAAs are determined objectively in relation to the salaries of the

---

[17] Defendants also assert that the burden is on Plaintiffs to negate every conceivable justification for the statutory requirement that a VSO be a veteran.  They assert that this is because the state statute requiring VSOs to be veterans is gender neutral, and that therefore a challenge to the statute is subject to the rational basis standard of review.  The Court agrees with Plaintiffs that this argument is irrelevant to the issues in this case.  Plaintiffs are not challenging the requirement that VSOs be veterans.  Plaintiffs are not trying to become VSOs.  Instead, Plaintiffs are claiming that the veteran status requirement does not legitimately justify the difference in pay between CVAAs and VSOs, and thus the requirement is really a pretext for sex discrimination.

VSOs.  Therefore, Defendants have met their burden of showing that good faith may be a "factor other than sex."  Furthermore, even if Plaintiffs are not properly classified, Defendants claim that a wage disparity due to a good faith mistake in classification can be a "factor other than sex."  The Sixth Circuit has held that a wage disparity due to mistake may be a "factor other than sex," as long as the employer proves that sex provides no part of the basis for the wage differential.  *Timmer v. Michigan Dep't of Commerce*, 104 F.2d 833, 843-44 (6th Cir. 1997).  There is a question of fact as to whether sex was a part of the basis for the difference between CVAA and VSO wages.  Therefore, Defendants may be able to assert the affirmative defense of "factor other than sex" based on mistaken classification.

Finally, Defendants assert that the creation of a new classification could violate the *Frazer* decree's no-bypass rule,[18] which is a "factor other than sex" as to why the pay of CVAAs cannot be changed.  However, there is no evidence that reclassifying the CVAAs would necessarily have to violate the no-bypass rule.[19]  Clearly, the rule could still apply

---

[18] *Frazer* refers to the case of *United States v. Frazer*, 317 F. Supp. 1079 (M.D. Ala. 1970), which concerned the Alabama Merit System.  The *Frazer* no-bypass rule is as follows:

> Defendants shall not appoint or offer a position to a lower-ranking white applicant on a certificate in preference to a higher-ranking available Negro applicant, unless the defendants have first contacted and interviewed the higher-ranking Negro applicant and have determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or is unavailable.  In every instance where a determination is made that the Negro applicant is unfit or unavailable, documentary evidence shall be maintained by the defendants that will sustain such finding.

*Id.* at 1091.

[19] In fact, Defendants only assert that a new classification "could" violate the *Frazer* order, not that it would necessarily violate the *Frazer* order.

38

within the new classification.   The mere suggestion that a new classification could hypothetically violate the no-bypass rule is not enough to meet the Eleventh Circuit's standard concerning the "factor other than sex" exception.

Because Defendants have presented adequate evidence that, if true, would permit them to assert the affirmative defense of "factor other than sex"as to veteran status or good faith belief, the Court must determine whether either of these justifications may be a pretext for sex discrimination.

### 4.    Pretext

When the defendant overcomes the burden of proving an affirmative defense, the plaintiff must rebut the explanation by showing, with affirmative evidence, that the defendant's reason is pretextual or offered as a post-event justification for a gender-based differential. *See Schwartz v. Florida Bd. of Regents,* 954 F.2d 620, 623 (11th Cir. 1991).  If the plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial; otherwise summary judgment is appropriate.  *Irby*, 44 F.3d at 954.  The question of pretext places the burden of production on the plaintiff to come forward with evidence that could disprove the affirmative defense.  On summary judgment, this means "evidence from which it may reasonably be inferred that the *real* factor behind wage differentials was *not* the identified factor other than sex." *Behm v. United States*, No. 00-222C, 2005 WL 276554, *4 (Fed. Cl. Oct. 24, 2005).

First, Defendants claim that the fact that VSOs are required to be wartime veterans

accounts for the pay differential. Plaintiffs have put forth evidence showing that the VSOs' wartime veteran status does not result in their work being any different from the work of CVAAs, and that therefore their veteran status does not justify their higher salaries. This evidence is sufficient to infer that veteran status is not the real reason for the pay differential.

Second, Defendants argue that the good faith belief that the Plaintiffs were properly classified is the reason for the difference in pay. Plaintiffs claim that the evidence, particularly the meetings of the Alabama VA management, shows that neither the Alabama VA nor the SPD in good faith believed that Plaintiffs were properly classified. Plaintiffs also claim there is no evidence of any mistake in classification because Defendants knew that Plaintiffs were improperly classified. Again, this is sufficient evidence from which it could be inferred that the good faith belief that Plaintiffs were properly classified is not the real reason for the pay differential.

5.   *Conclusion*

Plaintiffs (other than Vicky Brown and Christine Hale) have created a genuine issue of fact as to whether their jobs are "substantially equal" to those of the VSOs, and therefore, for the purposes of Defendants Motion for Summary Judgment, they have established a *prima facie* case of an EPA violation. In response, Defendants asserted the affirmative defenses of "merit system" and "factor other than sex." While Defendants did not meet their burden of production on the "merit system" defense, they did present adequate evidence to create an issue of fact as to whether they may assert the "factor other than sex" defense on

40

the basis of the veteran status requirement or a good faith belief that Plaintiffs were properly classified.  However, Plaintiffs also presented adequate evidence from which it could be inferred that Defendants' two claimed factors other than sex were not the real reasons for the pay disparity, and that the pay disparity was due to sex.  Therefore, summary judgment on Plaintiffs Vicky Brown and Christine Hale's EPA claims is due to be granted, while summary judgment on all of the other Plaintiffs' EPA claim is due to be denied.

B.    *Title VII*

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  When an employee seeks to prove a claim of gender-based wage discrimination, the test to be applied is the familiar burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny.  *Miranda,* 975 F.2d at 1528.

1.    *Preliminary Issues*

Prior to evaluating the substantive issues relating to Plaintiffs' claims that Defendants violated Title VII, the Court must address several preliminary issues raised by the Defendants in relation to Plaintiffs' Title VII claims.

a.    *Timeliness of EEOC Charges*

Under Title VII, an individual must file a charge with the EEOC "within 180 days after the alleged unlawful employment practice occurred." 42 U.S.C § 2000e-5(e)(1).

41

The parties agree that the Title VII claims of Plaintiffs Collier, Thomason, and Judkins are due to be dismissed because they untimely filed their EEOC petitions. Thus, summary judgment is due to be granted as to these three Plaintiffs on their Title VII claims.

Additionally, Defendants claim that Plaintiffs Shirl Brogdon, Sandra Brown, Deborah Murphree, Jan Robbins, and Cecilia Talley failed to timely file EEOC charges, and thus have not satisfied the prerequisites to a Title VII action.[20] It is undisputed that these Plaintiffs never filed charges with the EEOC. While timely filing of an EEOC charge is a prerequisite to a Title VII action, in certain instances, a plaintiff who has not filed an EEOC charge may rely on another plaintiff's charge. In multiple-plaintiff, non-class action suits, a plaintiff can rely on the charge of her co-plaintiff if the charge relied on is timely and not otherwise defective and the individual claims of the filing and non-filing plaintiffs have arisen out of similar discriminatory treatment in the same time frame. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 449-50 (11th Cir. 1993). Defendants do not contest the validity of the other Plaintiffs' EEOC charges. Furthermore, it is clear that the claims of both the filing and non-filing Plaintiffs are basically identical in terms of time frame and discriminatory treatment alleged. Therefore, despite the fact that they did not file EEOC charges, Plaintiffs Brogdon, S. Brown, Murphree, Robbins, and Talley may still assert their Title VII claims.

    b.    *Right-to-Sue Letters*

---

[20] Defendants assert that filing on an EEOC charge is a jurisdictional prerequisite, but Eleventh Circuit precedent is to the contrary. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1103 n.32 (11th Cir. 1996)(stating that "[t]he timely filing on an EEOC charge is not a jurisdictional prerequisite to bringing a Title VII suit in federal court and is thus subject to waiver and estoppel").

As a condition precedent to bringing a Title VII action against a governmental agency, a plaintiff must obtain a right-to-sue letter from the Attorney General. *See* 29 C.F.R. § 1601.28(d). Defendants claim that Plaintiffs' Title VII claims are due to be dismissed because their right-to-sue letters were signed by Karen L. Ferguson, a Civil Rights Analyst in the Employment Litigation Section of the Civil Rights Division of the U.S. Department of Justice, not by the Attorney General. However, Ms. Ferguson signed on behalf of Ralph F. Boyd, Jr., Assistant Attorney General for the Civil Rights Division. A number of courts have accepted right-to-sue letters signed by the Assistant Attorney General as fulfilling the right-to-sue letter requirement. *See, e.g., Marrero Rivera v. Dep't of Justice of the Commonwealth of Puerto Rico*, 821 F. Supp. 65, 67 (D. P.R. 1993); *Quarles v. N. Miss. Retardation Ctr.*, 455 F. Supp. 52, 54 (N.D. Miss. 1978). This Court also finds that the signature of the Assistant Attorney General (by the Civil Rights Analyst) fulfills the requirement of a right-to-sue letter. Thus, Plaintiffs' Title VII claims are not barred by failure to comply with the right-to-sue letter requirement.

### c. *Exclusion of State Statutes Privileging Veterans*

Title VII provides that "[n]othing in this subchapter shall be construed to repeal or modify any Federal, State, territorial, or local law creating special rights or preferences for veterans." 42 U.S.C. § 2000e-11. Defendants assert that this provision prevents Plaintiffs from bringing their Title VII claims because it excludes from Title VII's coverage the Alabama statute requiring VSOs to be wartime veterans. Plaintiffs respond by again stating

43

that they are not challenging the veteran status requirement and do not want to become VSOs. Plaintiffs point out that all of the cases cited by Defendants are hiring cases in which a non-veteran seeks to be hired into a position that has a veteran preference. *See, e.g., Skillern v. Bolger*, 725 F.2d 1121, 1123 (7th Cir. 1984). The Court agrees with Plaintiffs that such cases are distinguishable from the present pay disparity case. Plaintiffs are not asking to be hired as VSOs despite the fact that they are not veterans; instead, they are asking to be paid equally for equal work. Thus, Title VII's exclusion of veteran preference statutes is inapplicable to this case.

As there are Title VII claims that remain after addressing the preliminary issues, the Court will now evaluate Plaintiffs' substantive Title VII claims.

2.      *Prima Facie Case*

First, a plaintiff  must establish a *prima facie* case of sex discrimination.  To do so, the plaintiff must demonstrate that she is female and that the job she occupies is similar to higher paying jobs occupied by males. *Miranda,* 975 F.2d at 1529.  Under Title VII, there is a more relaxed standard of similarity between the plaintiff's job and her comparator's job than under the EPA. *Id.* at 1526.  As discussed above, most of the Plaintiffs have put forth enough evidence to establish a *prima facie* case under the EPA, therefore, because of the more relaxed standard, they have also established a *prima facie* case under Title VII. Plaintiffs Vicky Brown and Christine Hale failed to establish a *prima facie* case under the EPA because they admitted that the VSOs were their supervisors. However, under the more

relaxed Title VII standard of similarity, those admissions are insufficient for the Court to find that they have failed to establish a *prima facie* case under Title VII.  Thus, the Court holds that all of the Plaintiffs have put forth enough evidence to establish a *prima facie* Title VII violation.

> 3.  *Legitimate, Nondiscriminatory Reason for Pay Differential*

Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action.  *See, e.g., Holifield v. Reno,* 115 F.3d at 1564 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)).  The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564.  Defendants assert that they have three legitimate, non-discriminatory reasons for paying VSOs higher salaries: the dual classification system, the veteran status requirement, and a good faith belief that Plaintiffs are appropriately classified.  Plaintiffs concede that Defendants have met their burden on the "dual classification" reason.  For the reasons discussed in relation to Defendants' affirmative defenses under the EPA, the Court finds that Defendants have introduced enough evidence to meet their burden of showing that the veteran status requirement and good faith belief in proper classification are legitimate, nondiscriminatory reasons for the difference in pay.

> 4.  *Pretext*

The burden now shifts back to the Plaintiffs "to establish by a preponderance of the evidence that the proffered justifications are actually a pretext for gender-based

discrimination.**"** *Miranda,* 975 F.2d at 1529.  The Plaintiffs may seek to demonstrate that the proffered justification was not the true reason for the pay differential "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Miranda*, 975 F.2d at 1529.  While Plaintiffs ultimately have the burden of proving an intent to discriminate on the basis of sex, *Miranda*, 975 F.2d at 1526, "[a]t summary judgment, plaintiffs' burden is simply to raise a genuine factual question as to the existence of pretext. . . .  Summary judgment is appropriate when evidence of discriminatory intent is totally lacking.  This will seldom be the case when the elusive factual question of intentional discrimination is involved." *Mulhall*, 19 F.3d at 598 (internal citations and quotations omitted).

Plaintiffs claim that the veteran status requirement is pretextual because the fact that cases are not routed to CVAAs or VSOs based on veteran status suggests that veteran status is irrelevant to their work.  This is adequate to create a triable issue as to whether the veteran status requirement is a pretext for discrimination.  As to Defendants' other two reasons, Plaintiffs assert that they are pretextual because there is evidence that Defendants admitted that CVAAs perform basically the same work as VSOs, but refused to fix the pay differential.  Thus, Plaintiffs claim, the dual classification system is not the true explanation for the difference in pay and there was no good faith mistake in classification because Defendants knew the classification was wrong.  This is enough evidence to create a genuine question of

fact as to pretext and preclude summary judgment on Plaintiffs' Title VII claims. Therefore, summary judgment is due to be denied on the remaining Plaintiffs' Title VII claims.[21]

C.    *Potential Liability of the Alabama VA*

Defendants assert that, even assuming Plaintiffs' pay is in violation of the EPA and/or Title VII, Defendant Alabama VA cannot be held liable because it does not exercise any control over Plaintiffs' pay or classification. Defendants cite the Eighth Circuit case *Strecker v. Grand Forks County Soc. Serv. Bd.*, 640 F.2d 96 (8th Cir. 1981) *abrogated on other grounds by Robino v. Norton*, 682 F.2d 192 (8th Cir. 1982), to support their argument. In that case, plaintiff worked for the Grand Forks County Social Service Board, but her salary and classification were determined by the Central Personnel Division. The Board could only recommend changes in classification, which it did several times, but could not actually change her classification. The court held that "[t]he evidence may well support the conclusion that the classification underpaid capable people . . . however, there is no showing that the system was designed to, or in fact resulted in underpaying persons because of their sex." *Id.* at 103. The court then went on to note that

> In any event, the bottom line is that . . . the Board could not advance [plaintiff] without Central Personnel either altering its classification requirements or reevaluating [plaintiff's] personal qualifications. . . . [T]he board supported [plaintiff] in efforts to have her advanced. On the record it is difficult to understand what more . . . the Board could do to help [plaintiff]. It is obvious that Central Personnel controlled her advancement, not . . . the Board.

---

[21] That is, those Plaintiffs whose Title VII claims are not due to be dismissed for failure to timely file an EEOC charge.

*Id.* Because the court held that there was no showing that the plaintiff was underpaid because of her sex, these statements concerning the Board's inability to raise her salary are dicta. So, though the relationship between the Board and Central Personnel in *Strecker* is similar to the relationship between the Alabama VA and SPD in the present action, *Strecker* does not support the Defendants' contention that the Alabama VA cannot be held liable for Plaintiffs' salary.

Plaintiffs argue that the Alabama VA may be held liable for EPA and/or Title VII violations, citing the Eleventh Circuit case *Morgado v. Birmingham-Jefferson County Civil Defense Corps*, 706 F.2d 1184 (11th Cir. 1983). There, plaintiff was employed by the Birmingham-Jefferson County Civil Defense Corps (hereinafter "Corps"). For jobs within the Corps, including plaintiff's job, the Jefferson County Personnel Board (hereinafter "Board") wrote the descriptions, recruited and screened applicants, and set salaries. The Board had sole authority to increase plaintiff's pay. At various times, plaintiff requested salary increases from the Board. These requests were supported by the Corps' Director, who supervised her work, but nonetheless were consistently rejected by the Board. The district court made an award against the Corps and the co-chairmen of the Birmingham-Jefferson County Civil Defense Mayors' Advisory Council for the amount of actual underpayment of plaintiff's wages. The district court also awarded liquidated damages against the Board, but held that the Corps was not liable for liquidated damages because the Corps was prohibited from increasing plaintiff's pay by virtue of state law and Board regulations. The district

court further held that the Board was not liable for back pay as a matter of law because plaintiff's salary was not paid by the Board, but merely controlled by it.  On appeal, the Corps contended that it should not be held liable for back pay because it had consistently attempted to obtain a pay increase for plaintiff but continued to underpay her because the Board prohibited a salary increase and because of state law.  The plaintiff argued that both the Corps and the Board should be jointly liable for back pay.  The Eleventh Circuit stated that because "the Corps paid [plaintiff] and . . . the Board . . . set that pay . . . [t]he two entities are not independent; one is making a management or employment decision for the other." *Id.* at 1190.  The court then held that the district court's conclusion that "since the Corps paid [plaintiff], it was liable for the underpayment, and since the Personnel Board had set the policy, it was liable for liquidated damages" was reasonable. *Id.*   Similarly, in the present case, the SPD determines Plaintiffs' salaries, but the Alabama VA pays their salaries. Therefore, as in *Morgado*, both entities may be held liable to the Plaintiffs for violation of the EPA and/or Title VII.

## CONCLUSION

In sum, summary judgment is due to be granted in favor of Defendants as to the EPA claims of Plaintiffs Vicky Brown and Christine Hale and as to the Title VII claims of Plaintiffs Susan Collier, Sue Judkins, and Theresa Thomason.  Summary judgment is also due to be granted in favor of Defendants as to Plaintiff Collier's constructive discharge claim.  Summary judgment is due to be denied as to all of the other Plaintiffs' EPA and Title

49

VII claims.

Therefore, for the reasons stated above, the Defendants' Motion for Summary Judgment (Doc. # 72) is hereby GRANTED IN PART and DENIED IN PART.

DONE this the 3rd day of March, 2006.

_____/s/ Mark E.  Fuller_____

CHIEF UNITED STATES DISTRICT JUDGE

## Appendix
## Remaining VSO Comparators for Each Plaintiff

1. <u>For Vickie K. Prewett</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Mike Beaird, Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson, Charles R. Ross.

2. <u>For Deborah Coker</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson.

3. <u>For Lisa Jackson</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Mike Beaird, Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson, Charles R. Ross.

4. <u>For Betty Dubose</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims,  Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson, Charles R. Ross.

5. <u>For Theresa Thomason</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Charles David McElwee, Joseph Morris, James Baggett, Dalton Wester, Charles Abron, Jimmy Sims, Mike Beaird, Jeff Thompson, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson.

6. <u>For Valerie Porter Williams</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Charles David McElwee, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Mike Beaird, Steven Louis, Jeff Thompson, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson, Charles R. Ross.

7. <u>For Susan Collier</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Charles David McElwee, Joseph Morris, James Baggett, Dalton Wester, Charles Abron, Jimmy Sims, Mike Beaird, Steven Louis, Jeff Thompson, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson.

8. <u>For Sandra M. Brown</u>: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Jimmy Sims,

Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson.

9.      For Jan Robbins: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson.

10.    For Deborah G. Murphree: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Jimmy Sims, Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson.

11.    For Cecilia J. Talley: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson, Charles R. Ross.

12.    For Shirl J. Brogdon: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Steven Louis, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson, Charles R. Ross.

13.    For Sue Judkins: John R. Haley, Robert I. Story, Samuel L. Flanigan, Lawrence Battiste, Charles David McElwee, Joseph Morris, James Baggett, Dalton Wester, Al Mollette, Charles Abron, Jimmy Sims, Mike Beaird, Jeff Thompson, August R. Lehe, Michael H. Graves, James F. Vaughn, Henry Michael Knodel, William C. Cowart, James E. Rowell, Dale M. Harrison, James E. Manning, Morris R. Steenson, Charles R. Ross.